Cargill v. Garland. Mr. Samp. May it please the Court, my name is Richard Samp. I'm here on behalf of the appellant, Mr. Cargill. At issue here is whether a bump stock is a machine gun, as defined by federal law, a definition that has been unchanged for decades. A bump stock is a device that can be attached to semi-automatic weapons, and it's just several pieces of plastic and a little bit of rubber. It has no mechanical parts whatsoever. From 2006 until 2017, the Department of Alcohol, Tobacco, Firearms, and Explosives said that these bump stocks were not machine guns, as defined by federal law. In 2018, the federal government reversed course. President Trump said he would like the ATF to rethink its position, and it complied, and it is now said that they are machine guns. We submit that ATF's prior definition, the longstanding one, is the correct one. The definition of machine gun is contained in 26 U.S.C. Section 5845B, and that statute says, somewhat abbreviatedly, that a machine gun is a weapon that can fire more than one shot automatically by a single function of the trigger. Those two terms, as far as we're concerned, are relatively clear. The government has been coming up with new synonyms for those words from time to time, and we don't find those objectionable. But we do object to the government then jumping to the conclusion that, after applying those new synonyms, that a bump stock is a machine gun. And we'd like to make four principal points today. First of all, we ask that the statute be read as a whole. The government continually pulls out individual words from the statute, and we think that that distorts it. A single pull of a semi-automatic weapon, even one that has a bump stock attached, will result in a single shot. To produce a second shot, the shooter must do something more. That something more is considerable manipulations with both of his hands. He must push forward with his non-shooting hand. He must pull back with his shooting finger or shooting hand. And we submit that, under those circumstances, producing a second shot does not occur automatically, because automatically generally means that something functions as a result of the action that is prescribed in this case. Does it hurt? I'm sorry. Is this uninterrupted time? Yeah. If I could have about five minutes and then go right ahead. Secondly, we think that there really is not any difference whether or not a bump stock is attached. A semi-automatic weapon can fire, can be bump fired with or without a bump stock, and yet it is well agreed that a semi-automatic weapon is not a machine gun. The mechanism is exactly the same even when a bump stock is attached, and we think that that failure of the government to come up with a meaningful distinction between a semi-automatic with and without a bump stock is fatal to its current interpretation of the statute. Third, the bump stocks are readily distinguishable from automatic weapons. An automatic weapon, you can set it up on a tripod, take one finger, pull the trigger back and hold it, and it will continue firing until the weapon runs out of ammunition. On the other hand, with a bump stock attached to a semi-automatic weapon, there will not be more than one shot unless considerable action beyond just pulling the trigger occurs. Finally, we don't think the statute is ambiguous and neither does the government, but if the court ends up deciding, as several courts of appeals have, that the statute is ambiguous, we think that under the rule of lenity, any ambiguity ought to be construed in our client's favor. The government has conceded that it lacks jurisdiction, it lacks statutory authority, to adopt a legislative rule and, therefore, this is an interpretive rule. Secondly, it has waived the application of any sort of Chevron deference, so that even if this were a legislative rule, Chevron deference would not apply. Thirdly, Chevron deference, the Supreme Court has held, is inapplicable when it comes to criminal statutes, and so really there is no need to apply Chevron deference, no call to apply it, and even if it did apply, the rule of lenity takes preference over Chevron deference. And with that, I would welcome questions from the court. One of the major points that the government likes to make is that 1934 definitions of the words automatically and function comply fully with the definitions that the government has adopted. It at one point said that a function of the trigger is the same as the pull of a trigger, and it now has changed that and it says a function of the trigger is equivalent to a pull of the trigger, plus any analogous motions, and we really have no problem with that whatsoever. They also argue that the word automatically should be defined based on 1934 definitions as being the same as self-acting or self-regulating, and again, we have no problem with that. What we do not agree with, however, is that by adding a bump stock to a semi-automatic weapon, somehow the firing sequence becomes either self-acting or self-regulating. The one function that a bump stock assists with, it assists a shooter in managing the recoil of the weapon. Without a bump stock, it perhaps will not recoil in exactly the same manner every time, and it becomes more difficult to sustain bump firing without the bump stock. Counsel, do you—I'm over here. The opinion of the court, the panel opinion, says in footnote 12 that Cargill does not argue that Congress cannot outlaw bump stocks. That's correct. You're not taking the position that Congress cannot outlaw bump stocks. That is correct, and in fact, 12 states in the country have outlawed bump stocks, and that has been one of our principal points all along, is that defining crimes like this are a legislative function, and we don't see the Second Amendment as being implicated by this case at all. And do you concede that the Aikens Accelerator is a machine gun, spring-aided, mechanical? The government says you do concede that. I'm not an expert on the Aikens Accelerator, but my impression is that, yes, it is a machine gun, and the reason is that you don't need to put forward pressure on the Aikens Accelerator. Aikens Accelerator was the earliest version of a bump stock. It has an internal spring so that the recoil of a weapon is automatic. That's by basic physics. And then there's no need to push forward because the spring pushes it forward, and that pushing forward of the rifle causes the trigger itself to push forward, and it bumps automatically into the finger of the shooter. And so, as I understand an Aikens Accelerator, it is a machine gun, and I think that the Aikens Accelerator well illustrates why the bump stocks at issue here are not machine guns because it does require, following the automatic recoil of the weapon, the shooter must push forward with the fore end of the rifle, pull back on the trigger grip or the trigger ledge itself, and that is what causes the trigger. And you're saying that has to happen each time another shot is fired? There has to be some movement by the shooter in order to affect a second, a third, and a fourth shot. That's correct. There has to be a movement. That's correct. Every single shot, he must do that. He must do what? Excuse me? Between every single shot, he must do what? He must, when the recoil causes the gun to go back, causes his arm to go back, he must push it back forward every time. He also must pull back with this hand in order to allow the trigger finger to make contact with the trigger that is coming forward because of pushing forward with his hand. Well, you say, Counsel, that he has to make that movement. My understanding is this, and you're going to correct me, I have no doubt, is that basically when the shooter sets his or her stance and is making the motion forward with one hand, backwards with the other, fires the trigger, all that's necessary is for that shooter to maintain his stance or her stance. He's not doing all of this. He's just staying still, isn't he? The shooter, it's not an easy process. Maybe that's where you're headed, but let me tell you, is there any muscular action other than maintaining the stance when the trigger is pulled the first time? Thereafter, isn't the shooter just maintaining that constant pressure both directions with the finger in that location and the firing goes on? It sounds sort of dramatic. And it is extremely tiring to maintain constantly going forward like that. It's not an easy process. Well, I'm not saying it's easy or hard, but it's not new motion every time, new physical reaction other than maintaining the pressures that were there when the firing first began. I would say that it is, to a certain extent, instinctual. It happens relatively fast, so the shooter has to train himself to be able to keep his trigger finger motionless and to make sure that his arm can keep going like this. He's probably not thinking about it, oh, I better push it again because it happens very, very quickly. But does it actually require a physical act by the shooter? Is that what's triggering it? In other words, it's simply whether the trigger itself is being impacted by one thing or another. In other words, I'm not sure why the statute would require the shooter themselves to be doing something as opposed to something happening to the trigger. The reason why it's important in our minds that the shooter has to be doing something is the word automatically. What the statute says is you begin with a single function of the trigger. If a single function of the trigger then sets in motion an automatic process, then the ‑‑ I guess the point I'm trying to make is something has to happen to the trigger, whether it's shooter-oriented or some other device. Imagine somebody invented a robot that caused the trigger to be pulled multiple times. All the shooter has to do is one single button and it turns on the robot, but the robot is triggering it multiple times. Is that a machine gun? I assume your answer would be no. That is a machine gun, and that is what this court held in the Camp case. In the Camp case, there was a single push of a switch or a button, and there was a motorized mechanism in the gun that then caused the trigger mechanically to, without anybody doing anything with the trigger, the trigger moved back and forth by itself, and that was held correctly, in our view, to be a machine gun, because one pull of the trigger, one function of the trigger, then caused all of these things to happen. And the mere fact that the trigger continued to move, the court held, was not relevant to the analysis. It was still a machine gun because it was all happening automatically. It's the automatic firing of successive shots. I'm sorry, I didn't hear that. The automatic firing of successive shots, one after another. Right. If it's automatic, it's a machine gun. That's not what the statute says. Sorry. I'm sorry, I didn't hear his question. I interrupted you. Go ahead. No, go ahead. I said that's not what the statute says. It says automatically more than one shot by a single function of the trigger. The hypothetical that you were talking about with Judge Chosin, like multiple functions of the trigger that were activated by a button, suggests that's a distinction, I think, that's in the text of the statute. Okay. In that particular case, they were referring to the button as the trigger. Well, why is that correct? The statute doesn't say a button. It says a single function of the trigger. I would think that the word trigger has been broadly construed by a number of courts of appeals, including the Court of Appeals. Traditionally, we think of a trigger as a lever that can be pushed forward or pulled. And in those circumstances, then yes, if the shooter must do repeated functions of that trigger or repeatedly functions, then it is not a machine gun. But in the camp case, the court defined a trigger to be the actual switch that you pushed. And I think that that is fair to provide a relatively broad definition. Okay. Counsel. Oh, I'm sorry. Go ahead. I'm over here. I do think there is a good argument that the focus is on the human and not others as to whether that's automatic, whether it's a machine gun, whether it's not. I'm trying to just understand. You've had this conversation with Judge Southwick. If I'm holding this rifle and I do the first shot holding down on the front, holding on the trigger, and I don't move after that, does it keep shooting or not? It's not possible to not move because your arm is always going to come back with the recoil. You have to then put the— Well, that's true with rifles in general. Excuse me? That's true with rifles in general. That's correct. Yeah. Okay. But what I'm saying is I'm not doing—this hand that's not the trigger hand, does it have to do—you keep going like that. Do I have to go like that or can I just hold on tight? If you held on tight and you prevented any recoil, I'm not sure that it would be an easy thing to do. But if you could do that, the gun would only fire once. So, counsel, assuming—I mean, there's a dispute as to whether or not it even matters whether there's human motion, whether that's required or not. But assuming, arguendo, that human motion is required, in order for the weapon to fire again, the shooter must apply forward pressure. It may occur quickly, but do you agree that the shooter is not maintaining stationary and trying to bulk himself up in the hypothetical that Judge Haynes was presenting? Instead, they are applying forward pressure. And whether that happens almost—I don't want to use the word automatically, but whether that happens very quickly and more naturally in human motion, it is the human that is moving forward. That is correct. That is human action that is required, and I believe that that human action, in addition to pulling back with the trigger hand, is what makes this not automatically. Now, I also agree that with a semi-automatic weapon, you do have to have multiple functions of the trigger, and so I agree with Judge Duncan with the point that you're making. But the way I heard your description, it sounded like the recoil forces the arm to move in one direction or the other. In other words, a shot's fired and there's recoil, and the arm moves based on the recoil. That's correct. So then the shooter actually has to do something to not have what normally happens happen, because what normally happens is there's recoil and the shooter reacts to the recoil. That's natural. That's normal. So the shooter has to do something against the norm in order to have this weapon continue firing the shot. That's correct, and that's why this is not a machine gun. It doesn't happen automatically. Instead, he has to take these additional actions. But if my arm normally goes back, unless I do something to make sure it doesn't normally go back, it's going to normally go back when I fire that first shot, and then all the shots that come after that are just going to happen. Right. I don't have to do anything else except the first shot. If it comes back and you don't do anything else, there's only one shot. If it comes back and you're not pushing forward, that's the end of the process. You have to be pushing back this way and holding back with this arm. Mr. Sam, since you're embracing the camp decision that it's not a look at whether the trigger is bouncing, it's the shooter's single action or not, my question is whether since Judge Esrey, as I understand, has military experience, he had a trial, he heard expert evidence. On all these questions you're getting about exactly push, pill, pull, do we have any assistance from the trial record in this case? Well, the trial record in this case, first of all, includes the administrative record, and as the government has repeatedly insisted, the administrative record is controlling in this APA case, and the ATF has thoroughly explained how the process takes place, and we really don't disagree with how it was described there. We do think that Judge Esrey made one mistake in his finding when he seemed to think that it was the recoil that caused the trigger to bump into the trigger finger. Instead, the recoil separates the trigger and the trigger finger, and it is only because of pushing back this way after the recoil that the trigger and the trigger finger come together. Did you raise that mistake anywhere until your reply brief on the en banc? We did not directly raise it, but we think that there are enough other findings in the district court that basically contradict that finding because the district court repeatedly said that he agreed that it required two hands to operate this, and, in fact, Mr. Smith, the expert witness at trial, explicitly said that it requires two hands to operate it, and he explicitly said in his testimony that the recoil separates the trigger and the trigger finger, so we were relying on all of the findings of fact. I don't think that that one finding of fact is determinative, but we do think these are. If the Supreme Court grants cert in the pending petitions from the Sixth Circuit and the Tenth Circuit and the Lackley petition from the D.C. Circuit, should we proceed or should we pause? I would suggest you would proceed. The cases that are before the court right now, first of all, they are both on a preliminary injunction stage. They are not final decisions the way this one is. Secondly, they are much more focused on the Chevron issue than this one is. Here, both the district judge and the panel said that they didn't find any ambiguity. The cert petitions, both from the Sixth Circuit and from the Tenth Circuit, point out that Chevron deference was applied and should not have been, so that the court might well decide the cases by saying that the lower courts improperly applied Chevron and then they would remand for further action in the case. I'm not sure there's any reason for a pause. We would still, at the end of the day, need a decision as to what this particular statute means. Could you quickly address your secondary argument on lenity? Yes. The rule of lenity is a longstanding issue of – a longstanding canon of statutory construction. And it applies in any criminal context. The Supreme Court, in its Chevron case, said that Chevron deference only applies after all other statutes, all other canons of statutory interpretation are applied. And one regularly applied canon is lenity. And so, therefore, it ought to come before the application of Chevron. And, indeed, in several recent cases, both of Bramski and one other appell, the Supreme Court has said that Chevron should have absolutely no application in the context of criminal statute. But it would come only if we determined there was some ambiguity contrary to what you all are arguing. Right. We don't believe the statute is ambiguous. And this is simply a backup argument if you find ambiguity. Thank you very much. I would like to reserve five minutes. May it please the court. Mark Stern for the government. I'm happy to take questions, obviously, on any concerns that the court has. But a lot of the discussion with my friend on the other side has focused on the issue of the automatic nature of the firearm. And I think I want to make clear, I'm not personally a firearms expert. However, the district court judge not only had the benefit of the administrative record, but conducted an evidentiary hearing. And ultimately, I would just suggest that where the court has questions, it might legitimately be occurring that records and the district court's conclusions about that record would be of great assistance. But just to sort of clarify in the sort of broad terms, the whole point of the bump stock really is to allow the shooter to fire, I'm just going to use automatically, not in a specialized sense, just sort of normal usage. That's the whole point of the bump stock. That's why you get a bump stock, is to allow you to do this. And it functions by you don't do anything with your trigger finger after the firing is initiated. The trigger finger sits on a ledge. And as the district court said, you could just replace that finger with a rod. So it's just... Whatever it is, the statute says single function of the trigger. The trigger still has to engage, right? Yes, the trigger moves back and forth, Your Honor. Say the finger, it says the trigger. That's right, Your Honor. And what the, I mean, again, to sort of, you know, counsel, I think, has correctly acknowledged that this court's decision in Camp addressed that and addressed it correctly and also recognizes that the 11th Circuit properly sustained the classification of the Aikens accelerator, which also, like, involved the trigger going back and forth. And when you look back to the sort of how this sort of all came into being and the colloquies with the head of the National Rifle Association at the time as well as the plain dictionary meanings at the time, what's clear is that, and here's where the word pull and function start to get used somewhat interchangeably. They're going, does it, like, work so that, like, you do one thing that triggers, like, the sequence? And then after that, the sequence has to be automatic. But the first question is, do you only have to do one thing? And that's what the entire discussion, like, was, sort of back and forth, trying to figure out what a machine gun was. And they didn't use the word, like, pull, which would be narrower. They used the word function. But the point that's relevant here is that that's what they're talking about, function. It's, like, it's the function, do it once. That's it. It starts off the firing. Then you come to, like, so is that, like, does that then trigger automatic firing? So the answer there is, yeah, you're holding, you know, an expert, and I'm also a bad actor. So you would be holding, like, the firearm. I mean, I have tried it, so I'm still not good at it. You simply are holding it, and you're pushing forward. Your trigger figure isn't doing anything other than sitting still. And you continue to maintain a continuous pressure. Does, like, your hand, like, does that jolt you back and forth a little bit? Yes, it certainly does. But you're not sort of forcibly taking it back and forth. Like, you're maintaining a continuous pressure. And it sort of boils down to an argument that if you have to do anything else other than press the trigger, then it can't be automatic. Don't, Mr. Stern, don't you have to at least react once for each shot? The trigger has to shoot once. It has to move for every single bullet. And your arm has to move for every single bullet, right? Well, I mean, I guess sort of in physical terms, a reaction has a reaction. Keep it. But, like, it doesn't move very much. It's not like you're, like, maintaining that pressure all the time. Well, did the government introduce any evidence to show that it was only a modicum of pressure? Virtually no pressure as opposed to a lot of strength or . . . Well, the ATF expert . . . I mean, I can't remember exactly what was said, but the ATF expert . . . And again, this is, obviously, my characterizations are not what's crucial. It's what's, like, in the administrative record and what was before the district court. But the ATF expert sort of, like, elaborated and more fully explained exactly how it works and the kind of pressure that you need to put to it. And the district court asked all the questions that are relevant to making that determination. So I just ask the court to look at that because, I mean, that's really . . . other than press the original trigger. I mean, even on the machine gun, you have to keep holding the trigger back for it to continue to fire. But it's still one trigger engagement, one bullet. Whereas an automatic weapon is, trigger goes back and all the bullets keep going out until, automatically, until it's stopped. Right. I agree. My only point was that, like, if you let go . . . I mean, this is why, like, it's . . . does the single function set off an automatic chain that keeps going until the, like, shooter, like, basically, sort of does something to stop it, usually by releasing the pressure. And it's going to be releasing the pressure like you take your finger off the trigger in the traditional model. Here, you, like, stop exerting the forward pressure. And the . . . I'm sorry. Well, you have a question. I didn't know it was that obvious. I was waiting for you to finish. Mr. Stern, I have sympathy for your position, but part as much as anything that concerns me is the statute. It's not talking about the trigger finger and one pull of the trigger finger. It says single function of the trigger. And some of my colleagues' questions and your friend on the other side are all talking about how the trigger has to keep being engaged. Now, the re-engagement may be automatic. I might allow you that. But it's still a re-engagement of the trigger for each firing. So we've got to make that fit for your position into the sense of it still being automatic. So focusing on the statutory language that it's a single function of the trigger, how do you make that work when you have however many shots there were, there's that many pulls on the trigger? Well, I mean, I think there are a couple of ways, Your Honor. I mean, one, the D.C. Circuit in its recent, like Quetty's opinion, is focusing in part on the use of the word by. It's like what happens, it's triggered by a single function of the trigger. And I thought that was a useful way of looking at it. And, again, you can sort of go back to think of sort of like when, you know, the concept, you know, was used was a single pull. And that's what they're interested in is does one thing start. And that's what this court said in Camp, where it goes, okay, there's just one, like the trigger kept going back and forth in Camp. Like, but you only did one thing to start it. Similarly, like flashily, the Seventh Circuit case. And the, for example, if you had a button that you needed to hold in like all the time while in order to keep it automatic. So you generally have to flip a switch to take the semi-automatic to make it automatic. But if you had to hold that switch up while you were pressing your finger back on the traditional machine gun, does that stop making it, stop making it a machine gun? I think the answer is no. And Judge Gibbon, I think, was right in the Eleventh and Sixth Circuit observation. Look, that would allow, that kind of thing would allow sort of very mind, like allow people just by making sort of minor additional things that you needed to do. Taking a gun that was like really automatic and sort of going, well, I have to also hold in that button so it's not automatic anymore. We don't think that that comports with any understanding like of automatic. And we think that the, I'm sorry. We think that the agency's, like, you know, definition is the correct one and its application here is correct. I think, you know, the district court decision is, you know, very careful in which the panel made, you know, sort of extensive reference, you know, to that decision. And again, I think that's, I mean, conceptually, I think it really is important to, like, recognize that the inquiry just can't really turn on, like, just does the trigger, go back and forth. Mr. Stern. I canned it. I'm sorry. You go ahead with your question. Well, I want to follow up on Judge Southwick's question. This case, like many statutory interpretation cases, comes down to what statute did Congress write. I mean, I think in one of the decisions, circuit decisions, there's a diagram of the sentence and a footnote. And I won't ask you to go through that because I didn't like diagramming sentences either. But I got two questions. The first one is the subject of this sentence. Do you agree that it is weapon? It's not shooter. So such that what we're concerned about here is the mechanism of the weapon and how it functions and not what the shooter does. I mean, it's the, I mean, because whether it's fired automatically, it can fire automatically more than one shot in your voting by a single function. A weapon which shoots automatically. Right. Not a shooter who does something. No, no, that's correct, Your Honor. A weapon which shoots. No, we're obviously talking about, I mean, we're not banning shooters. We're banning weapons. Okay, great. And then the second question is the automatically part. The automatically is tied to by a single function of the trigger. So if the weapon shoots automatically by something other than a single function of a trigger, then it is not a machine gun. Do you agree with that? No. Why not? I think that it has to be that the, let me clarify. I think I spoke too quickly. It's not that the, what you don't need is simply to hold in the trigger and do nothing else. The initial pull or function of the trigger is essential to starting it out. And that's what this court said, recognized in Kemp and in the Aikens classification, which is that you start it with a single function and then you go, is what happens by that single function an automatic sequence? And that's where my friend and I disagree. But isn't, I don't understand your reliance on the Aikens accelerator. Because I'm looking at the rule that the ATF wrote in the Aikens accelerator case, and it says, quote, removal and disposal of the internal spring would render the device a non-machine gun under the statutory definition. So obviously there's no internal spring here. I don't understand what the Aikens accelerator has to do with this. I think what it has to do, I mean, you're absolutely right, Your Honor, that this is like, you know, this is a change. But the agency revisited that part of its conclusion. Part of that is common to the Aikens accelerator and to the bump stock here, is the fact the trigger continues to move back and forth in both examples, in both cases. The difference is that you didn't have to maintain the same forward pressure with the Aikens accelerator. But in terms of the trigger mechanism, that starting out, that's the same. Can I follow up on one question that Judge Romney and Judge Southwick have asked, which is that in camp, the court focuses on the statutory definition and says we have to look at the word trigger. It's the most important part of the text. And the court points out that there is no statutory definition of the word trigger. And a lot of these cases hinge on what is the trigger. What is the government's view of what is the trigger in a bump stock? The trigger.  And it's the trigger that is manually going back and forth. The trigger is going back and forth. It's not the fore-end, the forward pressure on the fore-end of the gun. The forward pressure is what you need to do to maintain the automatic sequence. But for the government's view of the statutory definition of the single function of the trigger, we look at what everyone in the room would understand to be the trigger. In this case, yes. You begin it like that, and then you hold forward. So what it boils down to, again, is does the fact that you have to maintain the forward pressure make it something other than an automatic? You earlier called Judge Ezra's – I think you called it careful, his careful opinion. There was a finding in his opinion that all semi-automatic rifles can be bump-fired without a bump stock, without a belt loop or some other device. Do you agree with that, that all semi-automatic rifles can be bump-fired without a bump stock or some other device? In general, yes. I can't attest to all bump, but yes, you can bump-fire as a technique. It's a way of firing a gun, but it's not – that really does not initiate an automatic sequence. Why is bump-firing with a bump stock automatic, while bump-firing without a bump stock is not automatic? That's where the experts do a better job than I do, but the basic idea is that when it harnesses the recoil, all you really need to do is to maintain that constant forward pressure. When you're just doing it with a bump, just bump-firing, the recoil can go in any direction. To maintain pressure so that you have to keep rewriting it, you have to put in – all the work that the bump stock is doing for you isn't being done. You now have to do all of that work yourself. In various firearms, can you start – can a really skilled, talented shooter start to mimic what a machine gun does? There's one shooter who's always sighted, who can take any automatic gun, and he's so good. He can basically get off as many shots as a machine gun does just by going like that with his finger. But that doesn't mean that that firearm is not a semi-automatic weapon just because – Let me ask you – I don't know if somebody else – my colleague Judge Willard asked a friend on the other side about the cases pending on cert from other circuits representing that – I'm sure accurately from his viewpoint that they focused a lot on Chevron. Would you agree with that? Do you see a fair possibility those cases were not both heavily soaking with Chevron deference, and that may be all the big court decides? It's hard for me to – I mean, is the premise right that both of those cases are focused heavily on Chevron? They did, and it's – I mean, I think that it's unclear what the court would do if it took the case in theory. Maybe it would resolve the Chevron question, but then built into the decisions, those courts are saying, well, I need Chevron in order to rule for the government. So the court would have to stop at sort of like, okay, I'll resolve that, but then have it sent back. And I sort of – I'd have to – I can't remember what the questions presented are, but if the court grants cert, presumably we'll know that relatively near future, we can see what questions they grant cert on, and that ought to, I think, make that point clear. But a little more pointedly, I assume the government was asked to – I haven't read the cert filings. The government was asked to respond to the petitions? Yes. Did the government disavow Chevron? Yes. Did it say as it's taking the position here that the statute is plain? Yes, it's the same position. So the government is being consistent? Yes. Well, it seems to me that would be a big threshold issue that the court would have to go over before they'd get to Chevron. It might. I mean, we've urged that the court – I mean, we've urged with the same thing that we're urging with this court, that it should conclude that the definition is the best definition. I have a – the ATF took the position for well over a decade that a bump stock was not a machine gun, correct? That's correct. Well, how do you say that statutory language that hasn't changed can be black for 10 years and then it's white? Because you make a mistake. I mean, courts like change their views of what a statute means. The fact that you have to do interpretive work and can make a mistake in deciding a statute doesn't mean that there isn't a – When was the last time ATF conceded that it made a mistake? The Atkins Accelerator. They might have done it since then. But, I mean, say like in the Edelman v. Lynchburg case where the Supreme Court goes, look, I'm not – like I don't need to consider whether Chevron is necessary because we agree that the agency is the best definition. And then it drops a footnote saying, by the way, that doesn't mean that it was the only permissible definition either. And all we're saying is like the court reviews like de novo. What's the standard of review here? It's not a mistake. When the ATF comes out with a criminal – this is a criminal statute. It says for 10 years it means one thing and then in the rulemaking says, oh, it means another. The standard of review I don't think for us is a mistake, is it? No. The question is what does the current – What does the current – I guess we – this record does present us with that. Attorney General Barr giving it a hard second look after the Las Vegas massacre, 60 people, 800 injured. So we can disagree about whether they should have given it a second look and whether they should reinterpret it. But one thing that's always perplexing about this case, and you know I was on the panel, is this issue comes up all the time in state case law, I would think, in terms of virtually every state bans machine guns. And, for example, Texas uses the identical language, practically the identical language of the federal government. Do you know of any state court that has reviewed a conviction and has adopted the mechanistic interpretation to say this is legally insufficient for a conviction or it triggers the rule of remedy? That's my first question. Do you know both, if you can remember? I think I'm correct that the converters that are being used now are actually moving away from bump stops. They're these little plastic switches. Do you know of any convictions or case law that would assist us saying that new mechanistic conversion is or isn't a machine gun? Those are my two questions. I'm not aware of any. I'm happy when we get back to Washington, I'll check with ATF to make sure and get back to the court if we find any. I'm just not aware. Not aware of either. I'm not aware of either. But I will also say we have not researched that question, so I don't want to represent the fact that I don't know it means anything other than that. I think I would have known, but I'm going to double check to make sure. I'm happy to answer any more questions. The court's been very generous with its time and we appreciate it. Thank you very much. Counsel for the government seemed to suggest that more than just pulling the trigger is required to make an automatic weapon continue to fire, that you need to continue to hold the trigger. And our position, as we spelled out in our brief, is that basically pulling and holding the trigger is a single action. That's essentially what the Supreme Court held in the Staples case. The ATF basically takes that same position. There is a type of trigger called a binary trigger, which if you pull the trigger, you get one shot. If you let it go, that's a second shot. ATF has consistently said that that is not a machine gun, and that is because pulling and then letting go are two separate actions. So therefore, by that reasoning, pulling and continuing to hold the trigger is only a single action. The government suggests that the finger could be replaced with a post, and nonetheless, when you're bump firing, it would continue to fire without your finger being there. And that's correct. The finger is sitting there, and it's the trigger coming forward and hitting it that causes the weapon to fire, and that would be true if it was a post or not. But what the government doesn't mention is that you must nonetheless, even with a post there, you would continue to have to push forward. You would continue to have to pull back. You may not contact the trigger, but you would have to have your trigger hand on the grip and pulling that back, and those actions are what mean that it is not an automatic sequence that is occurring. Furthermore, in every single one of those situations, the trigger is going to continually function multiple times. It will not be one function of the trigger, and the trigger is functioning multiple times precisely because, not because of the initial pull of the trigger as in camp, it is continuing to function because of the human actions that are taking place. There was some question about whether there have been any criminal convictions, and I'm not sure that, Judge Higginson, this answers your question, but the U.S. Court of Appeals for the Navy Marine Corps Criminal Appeals overturned a conviction for possession of a bump stock precisely on the grounds that we are arguing that a bump stock is not a machine gun. There is no question that the use of a bump stock facilitates the ability of the shooter to manage the recoil of the weapon. The government seems to suggest that that is the automatic function that is performed, and therefore that they satisfy the automatically requirement of the statute. The fact is that a semi-automatic weapon, as its name suggests, has lots of automatic features. Among them, it will eject the cartridge that has been spent, and it will put a new cartridge in for you, and that is what allows for rapid firing. What it will not do is allow you, with a single function of the trigger, to fire more than one shot, and for that reason, it is not a machine gun. I'm trying to make sure I understand how this works, because the brief said you put your finger on a shelf that's not the trigger to start the whole thing, right? No, I think we just heard a concession from the government that the trigger is the lever trigger on a semi-automatic weapon, even when you have a bump stock. The pushing forward is not the trigger, I believe the government just said, but even if it were, you would still have to pull back. But isn't the single function the pushing forward and pulling back, and until you release that, it will continue to fire? The government explained in its brief that it's possible to, if you push the gun all the way back inside the bump stock casing to begin, at that point, the trigger will not be in contact with anywhere near the finger, and it requires a push forward to start it. That is one way you can start the firing sequence. Nonetheless, whether you do it that way or the more traditional way of pulling back on the trigger, the government has told you today that the trigger is the lever trigger. It is not something to do with the fore end of the rifle. Thank you very much. That will conclude the arguments today. These cases are understood. Thank you. Thank you.